IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Gary Holliday and Soinya Holliday, | ) | Civil Action No. 2:18-1503-RMG |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Nissan Motor Co., Ltd., Nissan North America, Inc., Calsonic Kansei North America, Inc., and Calsonic Kansei Corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendant Calsonic Kansei North America, Inc.'s renewed motion to dismiss for lack of personal jurisdiction (Dkt. No. 52). For the reasons set forth below, the Court denies the motion to dismiss.

I. **Background**

On September 5, 2015, Plaintiff Gary Holliday was involved in an accident on I-95 in Wilson County, North Carolina while driving his 2011 Nissan Sentra. (Dkt. No. 10 at ¶ 30.) His vehicle was hit by a tractor trailer, ran off the highway, and crashed into a tree. (*Id.*) During the crash, the vehicle's side airbag allegedly failed to deploy. (*Id.* at ¶ 32.) As a result of the accident, Mr. Holliday was treated at Wake Medical Center in North Carolina for approximately six weeks, two of which he spent in a coma. (*Id.* at ¶ 35.) Mr. Holliday has required additional rehabilitation since the accident. (*Id.* at ¶ 36.) Mr. Holliday lives in Berkeley County, South Carolina with his wife, Plaintiff Soinya Holliday. (*Id.* at ¶¶ 7 – 8.) Together, they bring claims against Defendants Nissan Motor Co., Ltd., Nissan North America, Inc., Calsonic Kansei North America, Inc., and Calsonic Kansei Corporation, the developers, manufacturers and sellers of the occupant restraint system that allegedly failed to deploy during the accident. (*Id.* at ¶¶ 37 – 42.)

Defendant Calsonic Kansei North America ("CKNA") is a foreign company registered in Tennessee with its principal place of business in Shelbyville, Tennessee. (Dkt. No. 10 at ¶ 15.) On November 11, 2018, CKNA initially moved to dismiss for lack of personal jurisdiction. (Dkt. No. 25.) On December 26, 2018, the Court denied the motion as moot and ordered jurisdictional discovery to resolve the personal jurisdiction issues raised by the Parties. (Dkt. No. 37.) Jurisdictional discovery ended March 24, 2019, and CKNA has now renewed their motion to dismiss for lack of personal jurisdiction. (Dkt. No. 52.) CKNA reiterates that it is a Tennessee corporation without any property, agents, subsidiaries, employees or agents in South Carolina, and states that it has never specifically designed or distributed its products in South Carolina. (Dkt. No. 52-2.) Plaintiffs oppose the motion, pointing to numerous documents produced during jurisdictional discovery indicating that CKNA has previously sold automotive components to a company in South Carolina, Honda, and has recently solicited business in South Carolina from Volvo. (Dkt. No. 61 at 4 – 5.) CKNA filed a Reply. (Dkt. No. 55.)

## II. Legal Standard

The burden is on the plaintiff to establish personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). After jurisdictional discovery, a Plaintiff must prove personal jurisdiction by a preponderance of the evidence. *See Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 482 (D.S.C. 2016). *See also Brown v. Geha–Werke GmbH*, 69 F.Supp.2d 770, 774 (D.S.C. 1999) ("Although this court decided the issue of personal jurisdiction without an evidentiary hearing…the parties have engaged in jurisdictional discovery and offered evidence beyond the pleadings and affidavits…[therefore] Plaintiff must establish personal jurisdiction by a preponderance of the evidence.").

To meet their burden, a plaintiff must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with

constitutional due process requirements. *See, e.g. Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Since South Carolina's long-arm statute extends to the constitutional limits of due process, the only inquiry is whether due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128 (S.C. 1992).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). This can be met by showing either general or specific personal jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citations omitted). To assert general jurisdiction, a defendant's contacts must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014) (citations omitted). For a corporation, that traditionally renders them subject to general jurisdiction in its state of incorporation or principal place of business. *Id.* at 137.

To determine whether specific jurisdiction exists, the Court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (citations omitted). In other words, the defendant must have "minimum contacts" with the forum, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 – 476 (1985). Courts evaluate the reasonableness of personal jurisdiction by considering "(a) the burden on the defendant, (b) the

interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are both aspects of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

### III. Discussion

As the Court previously held (Dkt. No. 37), the Court does not have general jurisdiction over CKNA. Therefore, the Court focuses solely on whether specific personal jurisdiction exists.

The nature and facts of CKNA's contacts with South Carolina are undisputed. CKNA is a supplier of automotive parts to automobile manufacturers. (Dkt. No. 52-1 at 2.) Of note, CKNA produces and sell electronic controller integration to automobile manufacturers, which includes safety systems such as the airbags at issue here. (Dkt. No. 61-1 at 3.) Until April 1, 2016, Nissan held, at least, an approximately 40% share of CKNA's parent company, Calsonic Cansei Corporation. (*Id.*; Dkt. No. 55 at 3 n.2.) CKNA conducts the overwhelming majority of their sales to Nissan, and delivers parts to two Nissan assembly plants outside of South Carolina. (*Id.*; Dkt. No. 52-3.) Nissan, notably, sells its cars nationwide, has car dealerships in South Carolina, and sells tens of thousands of Nissan Sentras in the United States every year. (*Id.*)

CKNA, however, has other contacts with companies in South Carolina as well. First, from at least the early 2000s until 2016, CKNA sold meter assembles to Honda of South Carolina. (Dkt. Nos. 55 at 4; 61 at 3.) The sale agreements acknowledged that CKNA sold parts to a South Carolina company and CKNA agreed for the agreements to be governed, at least in part, by South Carolina law. (Dkt. No. 61-2.) CKNA has also continued to solicit business in South Carolina

after the relationship with Honda ended, and CKNA made a marketing trip to Charleston, South Carolina in 2018 to solicit business from Volvo and marketed their automobile components to Volvo in South Carolina. (Dkt. No. 61-1.)

The Fourth Circuit has consistently held that "a non-resident defendant may only be subject to personal jurisdiction under the 'stream of commerce theory' if that defendant engaged in some activity purposely directed at the forum state." *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir.1997) *citing Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir.1994)). Thus, the Fourth Circuit requires something more than the allegation that a defendant placed its product into the stream of commerce with the expectation that they would be purchased in the forum state. *See In re Celotex Corp.*, 124 F.3d at 629. While the Supreme Court is split over what a plaintiff must show to support specific personal jurisdiction on a stream of commerce theory, Justice O'Connor, in a plurality opinion, explained that such additional conduct may include "[1] designing the product for the market in the forum State, [2] advertising in the forum State, [3] establishing channels for providing regular advice to customers in the forum State, or [4] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi Metal Indus. Co., Ltd. v. Sup. Court of Cal., Solano Cty.*, 480 U.S. 102, 112, 107 S.Ct. 1026 (1987) (O'Connor, J.) (plurality opinion). Importantly, any "marketing" at issue must be directed at South Carolina, not at the United States generally. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2790 (2011).

CKNA has not submitted evidence disputing that their automobile equipment, including the occupant restraint system at issue here, are overwhelmingly sold to Nissan and instead the evidence demonstrates that, because of Nissan's nationwide distribution and sale of vehicles, it was foreseeable that CKNA's occupant restraint systems would end up in South Carolina.

However, CKNA contends that this would be merely imputing Nissan's contacts with South Carolina to CKNA. (Dkt. No. 55 at 3 n.2.) CKNA is correct that CKNA's sale of automobile components to Nissan, and the foreseeability that the airbags would end up in South Carolina alone, would not support jurisdiction as it does not show the "something more" required to find jurisdiction based on a stream of commerce theory. However, jurisdictional discovery has demonstrated that CKNA has purposefully directed sales of its automobile components to South Carolina over the past fifteen years. Defendant CKNA, in fact, has met multiple conditions that Justice O'Connor identified would qualify as "additional conduct." *Asahi Metal Indus. Co.*, 480 U.S. at 112. Since at least 2004 and through 2016, CKNA marketed and sold automobile components to Honda in South Carolina, directly contracting with the South Carolina automobile manufacturer and agreeing to amendments of their standard Purchase and Sale of Goods agreement with Honda of South Carolina. This long-term, over a decade, sales relationship which extended through the time of the accident in this case, demonstrates "the intent to serve the market" in South Carolina by marketing and selling a product in South Carolina and establishing a channel to enter into repeated agreements with an automobile manufacturer in the State. (Dkt. No. 61-2.)

Further, CKNA's argument that the Court should disregard CKNA's marketing to Volvo of South Carolina in 2018 is misplaced. While CKNA is correct that a defendant's contacts are measured at the time a claim arose, here 2015, the 2018 Volvo marketing materials is evidence of the continuous nature of CKNA's targeting of South Carolina for automobile component sales. (Dkt. No. 61-1.) Notably, a CKNA sales manager emailed to Volvo a "snap shot" of all the products CKNA offers and subsequently met with Volvo representatives in Charleston, South Carolina. (*Id.*) These contacts with automobile manufacturers in South Carolina, Honda for over a decade and continuing to Volvo in 2018, are the "something more" required to show that CKNA

did not merely know their products would enter South Carolina but rather also specifically marketed to South Carolina for over fifteen years.[1]

Therefore, CKNA has clearly indicated their intent to serve the South Carolina, by selling directly to an automobile manufacturer in the state for over a decade and by continuing to solicit business from automobile manufacturers through sales representatives, and therefore purposefully availed themselves of the privilege of conducting activities in South Carolina. Further, as CKNA sells airbags for Nissan automobiles which are distributed throughout the country, including in South Carolina, and CKNA has further directly targeted South Carolina with sales of automobile components for over fifteen years, the Plaintiffs' claims regarding an allegedly defective automobile component arises out of CKNA's contacts with South Carolina.

Finally, personal jurisdiction is reasonable here. The burden on Defendant CKNA is limited given a prior visit to the state for marketing purposes and the fact that they share defense counsel with the Nissan Defendants, who are not seeking dismissal. South Carolina has an interest in providing a forum for its injured citizens, and Plaintiffs have an interest in obtaining relief in their home state. Finally, the efficient resolution of controversies and the shared interests of the several states strongly support jurisdiction here. Defendants CKNA and Nissan have retained the same counsel and a lawsuit arising out of the same accident previously pending in the Eastern District of North Carolina has been dismissed by stipulation. (Dkt. No. 52-1.) Therefore, it

---

[1] *Sutton v. Motor Wheel Corp.*, LLC, No. CV 3:17-01161-MGL, 2018 WL 2197535 (D.S.C. May 14, 2018), a case relied on by CKNA, does not suggest a different result. Rather, in *Sutton*, the only contact the defendant had with South Carolina was that it knew its tires would be distributed in the United States and had a distribution agreement with a company that brought its tires to the United States through Charleston, South Carolina, and did not otherwise enter into agreements to sell specifically in South Carolina. *Id.* at * 4 – 5. Notably, in *Sutton*, there was no allegation that "any [defendant] product" was ever sold in South Carolina. *Id.* Here, by contrast, in addition to selling components to Honda with nationwide distribution, CKNA also specifically targeted South Carolina for sales and marketing and conducted sales with a South Carolina automobile company.

appears that this case is the only case currently pending where the rights of all Parties can be resolved in a single proceeding without the risk of inconsistent results and burdens on multiple courts.

The Court therefore has jurisdiction over Defendant CKNA.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Calsonic Kansei North America, Inc.'s renewed motion to dismiss for lack of personal jurisdiction (Dkt. No. 52).

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

June 24, 2019
Charleston, South Carolina